Jeffrey **CARPENTER**, Petitioner–Appellee,

v.

Walt **CHAPLEAU**, Respondent–Appellant.

No. 94–6240.

United States Court of Appeals,
Sixth Circuit.

Submitted Aug. 10, 1995.

Decided Jan. 11, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied Feb. 20, 1996.

**1270**

Jeffrey Carpenter, LaGrange, KY, Eric M. Jaegers (briefed), Louisville, KY, for Jeffrey Carpenter.

Laura Early (briefed), Office of the Atty. Gen., Frankfort, KY, for Walter Chapleau and Com. of Kentucky.

Before: RYAN, BATCHELDER, and MOORE, Circuit Judges.

RYAN, J., delivered the opinion of the court, in which BATCHELDER, J., joined. MOORE, J. (pp. 1274–1278), delivered a separate dissenting opinion.

RYAN, Circuit Judge.

Walt Chapleau, the warden of a Kentucky State Correctional Institution, appeals the judgment of the district court granting a writ of *habeas corpus* to the petitioner, Jeffrey Carpenter, on the grounds that the enhancement of Carpenter's state court sentence as a first degree persistent felony offender, following a previous sentence enhancement for second degree persistent felony offender, violated the Double Jeopardy Clause of the United States Constitution as applicable to the state's through the Fourteenth Amendment.

We conclude that the court erred, and therefore reverse.

## I.

In February 1990, there was a security problem, to put it mildly, at the Logan County Jail in Kentucky. Carpenter was then an inmate at the jail. He and a fellow inmate, Kevin Whittaker, escaped from the jail through a hole in the ceiling and later returned to the jail with two cases of beer. After Carpenter, Whittaker, and several other inmates finished the beer, Carpenter again left the jail, obtained more beer, and returned a second time. Still on the same day, Carpenter and Whittaker escaped from the jail again. During this third escapade, the two ransacked the Sheriff's Office and evidence room, took some evidence and weapons, and set the Sheriff's Office on fire. Logan County police apprehended Carpenter in the attic of the jail where he was found surrounded by drugs, firearms, and other contraband.

Carpenter was indicted by the Logan County grand jury on seven counts: (1) burglary in the first degree; (2) arson in the third degree; (3) tampering with physical evidence; (4) escape in the second degree; (5) possession of a handgun by a convicted felon; (6) promoting contraband in the first degree; and (7) persistent felony offender in the first degree. At the request of one of Carpenter's codefendants, the possession of a handgun by a convicted felon charge was severed, to be tried separately.

At the first state trial in October 1990, a jury convicted Carpenter of: (1) burglary in the first degree; (2) arson in the third degree; (3) tampering with physical evidence; (4) escape in the second degree; and (5) promoting contraband in the first degree. In

support of its effort to enhance Carpenter's sentence for being a persistent felony offender, Ky.Rev.Stat.Ann. § 532.080, the state introduced evidence that Carpenter had been convicted of four prior felonies. Under Kentucky law, proof of two or more prior felony convictions permits a jury to find that the defendant is a persistent felony offender in the first degree (PFO I). The evidence of four prior felony convictions notwithstanding, Carpenter's jury convicted him of two counts of persistent felony offender in the *second* degree (PFO II), which requires proof of only one prior felony conviction. One count was used to enhance Carpenter's sentence for the tampering with evidence charge, and the other, to enhance his sentence for promoting contraband. The evidence-tampering and promoting-contraband sentences were each enhanced to five years.

Carpenter was later brought to trial for the felon in possession of a firearm charge, which had been severed from the charges tried in the first case. He was convicted. To enhance the firearm offense sentence, the state sought to convict Carpenter of being a PFO I by introducing evidence of three of the same prior felony convictions of which it introduced evidence in the first trial. The jury convicted Carpenter of PFO I and his sentence was enhanced to ten years.

Carpenter appealed to the Kentucky Supreme Court. He claimed that his protection against double jeopardy was violated when the jury in the firearm offense case convicted him of PFO I after the jury in the first trial refused to convict him as a PFO I, convicting him instead of PFO II. The court rejected Carpenter's argument and affirmed his convictions and sentences. He then filed a petition for *habeas corpus* in the United States District Court for the Western District of Kentucky, raising several issues in addition to the double jeopardy claim he raised and lost in the Kentucky Supreme Court. A magistrate judge recommended that the petition be granted, in part, because, the magistrate judge found, the petitioner's PFO I conviction, imposed following the second trial, violated his right to be free from double jeopardy. The district court adopted the magistrate judge's recommendation. The district court believed that the magistrate judge "persuasively reasoned [that] 'once a persistent felony offender conviction has been obtained, in whatever degree, that degree of persistent felony offender, and no other, may be applied to all charges in the indictment for enhancement purposes.'" The district court added that "the facts of this case—a bifurcated trial on the count charging Petitioner as a felon in possession of a handgun—run afoul of the double jeopardy prohibition against, in the Supreme Court's words, 'affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." (Quoting *Burks v. United States,* 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978).) Accordingly, the district court issued a writ of *habeas corpus* and ruled that "Petitioner can only be found a persistent felony offender in the second degree and should be resentenced accordingly."

## II.

Warden Chapleau contends that the district court erred, arguing that persistent felony offender is a *status,* not an *offense,* and is therefore not subject to the bar against double jeopardy.

Carpenter responds that he was indeed twice placed in jeopardy because he was subjected a second time to a first degree persistent felony offender trial when the state failed to present sufficient evidence of that status in the first trial. Carpenter claims that the first jury's PFO II determination was an implicit acquittal of PFO I status. Thus, Carpenter argues, he could not be "retried" on a first degree persistent felony offender charge. This is especially true, he contends, because the determination of persistent felony offender status is a "trial-like" procedure in which the state is required to prove each element of persistent felony offender status beyond a reasonable doubt.

## III.

In an appeal involving a *habeas corpus* petition, this court renders *de novo* review of a district court's conclusions of law

and mixed questions of law and fact. *O'Hara v. Wigginton,* 24 F.3d 823, 827 (6th Cir.1994).

## IV.

 The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. It is well settled, however, that sentence enhancement provisions do not subject a defendant to multiple punishments for the same offense. *Witte v. United States,* —— U.S. ——, ——, 115 S.Ct. 2199, 2206, 132 L.Ed.2d 351 (1995) (citing *Gryger v. Burke,* 334 U.S. 728, 732, 68 S.Ct. 1256, 1258–59, 92 L.Ed. 1683 (1948)). We have held on a number of occasions that a habitual offender sentence does not violate the Double Jeopardy Clause. *See, e.g., United States v. Ilacqua,* 562 F.2d 399, 404 (6th Cir.1977), *cert. denied,* 435 U.S. 906, 98 S.Ct. 1453, 55 L.Ed.2d 497, *and cert. denied,* 435 U.S. 917, 98 S.Ct. 1473, 55 L.Ed.2d 508, *and cert. denied,* 435 U.S. 947, 98 S.Ct. 1532, 55 L.Ed.2d 545 (1978).

We have also held that a state may use the same predicate offenses to enhance a defendant's sentence on more than one occasion without running afoul of the Double Jeopardy Clause. In 1980, we addressed Kentucky's habitual offender law, Ky.Rev.Stat. Ann. § 431.190, *repealed by* section 532.080 (1975), which is the predecessor to the provision applied in this case. In *Montgomery v. Bordenkircher,* 620 F.2d 127 (6th Cir.), *cert. denied,* 449 U.S. 857, 101 S.Ct. 155, 66 L.Ed.2d 71 (1980), the defendant was convicted in a Kentucky state court of one count of armed robbery and one count of habitual criminality under section 431.190. These convictions took place in 1975. The state used three previous convictions as grounds for the habitual criminal charge: a 1950 conviction for robbery, a 1954 conviction for assault with the intent to rob, and an armed assault and habitual criminality conviction in 1964. *Id.* at 128. The defendant exhausted his state remedies and petitioned for *habeas corpus* relief, arguing that his right to be free from double jeopardy was violated when the prior felony convictions were used to enhance his sentence. This court held:

> It is clear that the habitual criminal statute does not establish an independent criminal offense. Rather, it defines a status and thereby serves to enhance punishment for a crime committed by a person who is a habitual criminal. Because the habitual criminal statute defines a status and not a separate offense, the double jeopardy prohibition is inapplicable.

*Id.* at 129 (citations omitted). This court therefore denied the defendant's petition.

Section 431.090, which was then applicable, provided:

> Any person convicted a second time of felony shall be confined in the penitentiary not less than double the time of the sentence under the first conviction; if convicted a third time of felony, he shall be confined in the penitentiary during his life. Judgment in such cases shall not be given for the increased penalty unless the jury finds, from the record and other competent evidence, the fact of former convictions for felony committed by the prisoner, in or out of this state.

The new statute, under which Carpenter's sentences were enhanced, section 532.080, eliminates the mandatory sentences set out in section 431.090, and provides instead that the severity of the authorized sentence enhancement depends upon the class of the underlying felony. Ky.Rev.Stat.Ann. § 532.080(6)(b). The new statute is premised on the policy that all persistent felony offenders should be punished more severely, but that not all persistent felony offenders deserve the same level of severity. Ky.Rev. Stat.Ann. § 532.080, comment.

The Kentucky Supreme Court has held that double jeopardy does not attach to persistent felony offender proceedings under section 532.080. In *White v. Commonwealth,* 770 S.W.2d 222 (Ky.1989), the defendant was convicted in a Kentucky state court of burglary and criminal mischief and his sentence was enhanced for being a PFO I. The Kentucky Court of Appeals reversed the PFO I conviction, ruling that the two prior felonies used to enhance the defendant's sentence constitute only one prior felony under section

532.080. The court of appeals remanded the case to the trial judge to sentence the defendant as a PFO II. *Id.* at 223. The defendant appealed and argued to the Kentucky Supreme Court that resentencing for PFO II was barred by the Double Jeopardy Clause. The Kentucky Supreme Court disagreed, stating:

> A PFO trial does not involve an independent criminal offense but rather a status which enhances punishment for a crime committed by a person who is an habitual criminal. . . .
>
> Conviction as a Persistent Felony Offender is not a charge of an independent criminal offense but rather a particular criminal status. Consequently double jeopardy does not attach. Persistent Felony Offender proceedings involve the status of the offender and the length of the punishment, not a separate or independent criminal offense.

*Id.* at 223–24.

The reasoning and the rule announced in *Montgomery v. Bordenkircher*, to the effect that the Double Jeopardy Clause does not apply to sentence enhancement, controls this case.[1] Although *Bordenkircher* involved the predecessor to the statute at issue in this case, the essential purpose of the statute has not changed and the reasoning in *Bordenkircher* is equally applicable to the current statute. It remains true that section 532.080 does not establish an independent criminal offense; it merely defines a status and serves to enhance punishment for a crime committed by a person who is a habitual criminal.

## V.

Carpenter also argues that under the Supreme Court's decision in *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), the state was foreclosed from submitting PFO I to a jury a second time. *Bullington* was the first occasion in which the Supreme Court retreated a bit from its general rule that the Double Jeopardy Clause does not apply to the sentencing phase of a criminal trial. In *Bullington*, the

Court held that the death penalty may not be imposed on a defendant upon reconviction, after an initial conviction in which the death penalty was rejected is set aside on appeal. *Id.* at 446–47, 101 S.Ct. at 1862–63. The Court held that the Double Jeopardy Clause applied because the death penalty sentencing proceeding under Missouri law was much like a trial on the issue of guilt or innocence. The Court identified several characteristics of Missouri's sentencing proceedings that made it comparable to a trial: (1) the discretion of the jury was restricted to only two options, death or life imprisonment; (2) the jury made its decision guided by substantive standards and based on evidence introduced in a formal, separate proceeding that resembles a trial; and (3) the state had to prove certain statutorily defined facts beyond a reasonable doubt in order to impose the death penalty. *Id.* at 438, 101 S.Ct. at 1857–58. The Court concluded that when a jury imposes a life sentence, it has determined that the state has failed to prove its case, and therefore that the jury has rendered an implied acquittal of the death sentence. *Id.* at 445, 101 S.Ct. at 1861–62. The Court also believed that the anxiety and ordeal suffered by a defendant in a capital sentencing proceeding is equal to the anxiety and ordeal suffered during a trial on the issue of guilt. *Id.* These principles were reaffirmed three years later in *Arizona v. Rumsey*, 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984).

Carpenter argues that the determination of persistent felony offender status is a "trial-like" procedure because the state is required to prove each element of persistent felony offender status beyond a reasonable doubt and thus, under *Bullington*, the state could not subject him to a PFO I determination a second time.

We reject Carpenter's analogy between Kentucky's persistent felony offender sentencing proceeding and the death penalty phase of a capital trial. It is true that PFO proceedings in Kentucky share some characteristics of Missouri's death penalty proceedings discussed in *Bullington*. As in *Bulling-*

---

1. Because we hold that the Double Jeopardy Clause does not apply to sentence enhancement, we do not address Carpenter's argument that the collateral estoppel component of the Double Jeopardy Clause precluded submission to the second jury of the PFO I charge.

*ton,* the state must prove each element of PFO status beyond a reasonable doubt, Ky. Rev.Stat.Ann. § 500.070(1), and the PFO status is determined in a separate proceeding, Ky.Rev.Stat.Ann. § 532.080(1). However, we are unconvinced that the anxiety and ordeal suffered by a defendant during a death penalty proceeding are in any respect comparable to those experienced by a defendant in a PFO proceeding.

There is another important distinction between a death penalty proceeding and a PFO proceeding. In a death penalty trial, the jury considers facts bearing on the guilt or innocence of the accused and circumstances surrounding the underlying crime. In Kentucky's sentence enhancement proceedings, however, the jury's determination of PFO status is completely independent of the facts surrounding the underlying crime for which the defendant was convicted. We do not believe the Double Jeopardy Clause is implicated in such a proceeding. *See Denton v. Duckworth,* 873 F.2d 144 (7th Cir.), *cert. denied,* 493 U.S. 941, 110 S.Ct. 341, 107 L.Ed.2d 330 (1989); *Linam v. Griffin,* 685 F.2d 369 (10th Cir.1982), *cert. denied,* 459 U.S. 1211, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983).

### VI.

Accordingly, we **REVERSE** the district court's judgment granting, in part, Carpenter's petition for *habeas corpus* relief.

KAREN NELSON MOORE, Circuit Judge, dissenting.

Because the collateral estoppel component of the Double Jeopardy Clause prohibits the Commonwealth from relitigating the degree of Carpenter's persistent felony offender status in a second proceeding based upon the identical prior crimes, and because I believe that the Double Jeopardy Clause applies in this case, I **DISSENT**. I would affirm the district court's order granting the writ of habeas corpus.

### I

The Kentucky persistent felony offender sentencing procedure is relatively simple. To obtain a first-degree persistent felony offender conviction, the Commonwealth must prove that a defendant has been convicted of two or more prior felony offenses, while a second-degree persistent felony offender conviction may be obtained by proof that a defendant has been convicted of only one prior felony offense. Ky.Rev.Stat.Ann. §§ 532.080(2), (3) (Baldwin 1995). The prosecutor is required to prove the existence of the previous convictions, although not their validity, beyond a reasonable doubt. *McGuire v. Commonwealth,* 885 S.W.2d 931, 936–37 (Ky.1994).

Carpenter was indicted on seven criminal counts and as a first-degree persistent felony offender. One of the criminal counts was severed and tried separately. In his first trial, Carpenter was found guilty of the six criminal counts, and was convicted as a second-degree persistent felony offender after the Commonwealth presented evidence of four prior felony convictions in the persistent felony offender proceeding. In his second trial, Carpenter was found guilty of the remaining criminal count, and was convicted as a first-degree persistent felony offender based upon three of the same prior felony convictions that the Commonwealth had presented as evidence in the first persistent felony offender proceeding. Conviction as a first-degree persistent felony offender significantly lengthened the sentence Carpenter would have received if he had been convicted simply as a second-degree persistent felony offender, as he was in the first trial.

### II

One of the central objectives of the Double Jeopardy Clause is to prevent the prosecution from having "another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks v. United States,* 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978). The Supreme Court has stated that:

> Implicit in this [objective] is the thought that if the Government may reprosecute, it gains an advantage from what it learns at the first trial about the strengths of the defense case and the weaknesses of its own.

*United States v. DiFrancesco,* 449 U.S. 117, 128, 101 S.Ct. 426, 433, 66 L.Ed.2d 328 (1980).

Collateral estoppel in criminal cases is a component of the Fifth Amendment's Double Jeopardy Clause, which is applicable to the states through incorporation into the Fourteenth Amendment. *Ashe v. Swenson,* 397 U.S. 436, 445, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970) (collateral estoppel is a component of the Fifth Amendment's Double Jeopardy Clause); *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969) (Fifth Amendment's Double Jeopardy Clause applies to the states through incorporation into the Fourteenth Amendment). Collateral estoppel is a matter of "constitutional fact" that a federal court must decide through an examination of the entire record. *Ashe,* 397 U.S. at 443, 90 S.Ct. at 1194. "[Collateral estoppel] means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* Where a judgment of acquittal is based on a general verdict, the court must examine the record of the prior proceeding and determine "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe,* 397 U.S. at 444, 90 S.Ct. at 1194.

Collateral estoppel precludes the second persistent felony offender proceeding in this case. In the first persistent felony offender proceeding, the Commonwealth presented evidence of four felony convictions in an attempt to convict Carpenter as a first-degree persistent felony offender. The jury convicted Carpenter as a second-degree persistent felony offender. In the second persistent felony offender proceeding, the Commonwealth again sought to convict Carpenter as a first-degree persistent felony offender using three of the same felony convictions as in the first proceeding. However, the first jury had already decided the ultimate fact—that Carpenter was not a first-degree persistent felony offender on the basis of those convictions—against the Commonwealth. The same parties had litigated the persistent felony offender issue previously, based on evidence of the same prior crimes; this precludes the relitigation of the same issue in a separate lawsuit, such as the second persistent felony offender proceeding.

The only issue in either of the persistent felony offender proceedings was the number of prior convictions. To obtain a first-degree persistent felony offender conviction, the Commonwealth had to prove that Carpenter had two or more prior convictions. In Carpenter's first persistent felony offender proceeding, the Commonwealth presented evidence of four prior convictions, but the jury convicted Carpenter only as a second-degree persistent felony offender, which requires only one prior conviction. The only rational interpretation of the first jury's verdict, therefore, is that the first jury did not believe the Commonwealth's evidence of three of the prior convictions.

Because the factfinder had already decided that these prior convictions presented by the Commonwealth were insufficient for first-degree persistent felony offender status, that issue of ultimate fact had already been litigated by the parties and finally decided. Collateral estoppel thus precluded the second persistent felony offender proceeding based on those same convictions. The Commonwealth was bound to the determination by the first jury that Carpenter was only a second-degree persistent felony offender. To permit the Commonwealth to relitigate the issue it has lost allows the Commonwealth a second chance to "muster its evidence" and present its case, in violation of the core Double Jeopardy Clause objective described in *Burks.* The result the majority reaches thus is clearly unconstitutional.

### III

The Supreme Court has stated that " ... a sentence does not have the qualities of constitutional finality that attend an acquittal." *United States v. DiFrancesco,* 449 U.S. 117, 134, 101 S.Ct. 426, 436, 66 L.Ed.2d 328 (1980). In *DiFrancesco,* the Court held that the Double Jeopardy Clause does not prevent increases in sentences upon authorized appeal by the government, because the imposition of any particular sentence does not act

as an "implied acquittal" of any greater sentence. *Id.* at 136 n. 14, 101 S.Ct. at 437 n. 14.

A year after the *DiFrancesco* decision, the Supreme Court decided *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), where it held that the Double Jeopardy Clause did apply to the sentencing portion of a capital case because of the trial-like nature of the capital sentencing procedure. *Id.* at 438–39, 101 S.Ct. at 1857–58. The Court noted that the prosecution was required to establish certain facts beyond a reasonable doubt in order to obtain the death penalty. *Id.* at 441, 101 S.Ct. at 1859. The Court also noted that the factfinder's discretion in a death penalty proceeding was limited to choosing one of two options, while a traditional sentencing judge had a large number of choices about which sentence to impose. *Id.* at 443–44, 101 S.Ct. at 1860–61. In *Bullington,* where the first jury declined to impose capital punishment and instead sentenced the defendant to life imprisonment, the Court held that the Double Jeopardy Clause prohibited reconsideration of the death penalty upon a retrial necessitated by other constitutional errors in the first trial.

The Supreme Court has not decided whether the Double Jeopardy Clause is applicable to non-capital sentencing proceedings that are sufficiently trial-like to meet the test set out in *Bullington.*[1] The majority here cites cases from the Seventh and Tenth Circuits holding that the Double Jeopardy Clause does not apply to such non-capital sentencing proceedings. *Denton v. Duckworth,* 873 F.2d 144 (7th Cir.), *cert. denied,* 493 U.S. 941, 110 S.Ct. 341, 107 L.Ed.2d 330 (1989); *Linam v. Griffin,* 685 F.2d 369 (10th Cir.1982), *cert. denied,* 459 U.S. 1211, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983). Although both courts stated that they would not extend *Bullington* to non-capital sentencing proceedings, the cases relied upon by the majority did not involve situations such as Carpenter's, where the government retried a defendant on a sentence enhancement charge after it failed to prove the very same charge

based on the same prior crimes in a prior sentence enhancement proceeding. Rather, both cases relied upon by the majority permitted retrials on sentence enhancement charges because the government's sentence enhancement convictions were overturned for "trial error," and thus did not involve an initial determination that the government's evidence was insufficient. *Denton,* 873 F.2d at 148 ("This clearly is a case of 'trial error,' and not of insufficiency of the evidence."); *Linam,* 685 F.2d at 373 ("The conclusion to be drawn is that the [state appellate court's] interpretation [resulting in the reversal of the enhancement conviction] meets the *Burks* Court's definition of trial error and is not a true finding of inadequacy of evidence."). Thus, both courts held that the Double Jeopardy Clause would not bar retrial after appellate reversal based on trial error even if the Double Jeopardy Clause were applicable. Their statements that they would not extend *Bullington* to noncapital sentencing proceedings are dicta that the majority reads too broadly.

Three other circuits have held persuasively that the Double Jeopardy Clause applies to non-capital sentencing proceedings that are sufficiently trial-like to meet the *Bullington* test. The Fifth Circuit has held that the Double Jeopardy Clause applies to bar a second non-capital sentence enhancement proceeding when the evidence at the first sentence enhancement proceeding was insufficient to establish the particular sentence enhancement. *Bullard v. Estelle,* 665 F.2d 1347, 1349 (5th Cir.1982), *vacated on other grounds,* 459 U.S. 1139, 103 S.Ct. 776, 74 L.Ed.2d 987 (1983); *French v. Estelle,* 692 F.2d 1021, 1025 (5th Cir.1982), *cert. denied,* 461 U.S. 937, 103 S.Ct. 2108, 77 L.Ed.2d 313 (1983). The Texas habitual offender proceeding at issue in *Bullard* required the state to prove beyond a reasonable doubt that the defendant had committed two prior felonies. 665 F.2d at 1357–58. The defendant in *Bullard* was initially convicted of habitual offender status, but his conviction was reversed on appeal because the state had presented insufficient evidence that the defendant com-

---

1. The Supreme Court has assumed, without deciding, that the *Bullington* rationale extends to non-capital sentencing proceedings. *Lockhart v.*

*Nelson,* 488 U.S. 33, 37 n. 6, 109 S.Ct. 285, 289 n. 6, 102 L.Ed.2d 265 (1988).

mitted the prior felonies. *Id.* at 1350. Upon remand, the trial court held a second habitual offender hearing, at which the defendant was convicted of being an habitual offender. *Id.* The Fifth Circuit held that the second habitual offender proceeding was barred by the Double Jeopardy Clause, and stated:

> Because [the defendant] was once subjected to an enhancement proceeding, because the appellate court found insufficient evidence of habitual offender status, thus leading to [the defendant's] implicit acquittal as a habitual offender, and because resentencing would require a second trial with the State having an unwarranted "second bite at the apple" to prove facts that it failed to prove initially, the double jeopardy clause bars this second trial-like enhancement . . . proceeding.

*Id.* at 1362. Although *Bullard* was vacated by the Supreme Court on state-law grounds, the Fifth Circuit continues to follow *Bullard*'s reasoning as circuit precedent. *Briggs v. Procunier,* 764 F.2d 368, 371 (5th Cir.1985).

The Eighth Circuit held that the Double Jeopardy Clause applied to Arkansas habitual criminal offender sentencing proceedings. *Nelson v. Lockhart,* 828 F.2d 446, 450–51 (8th Cir.1987), *rev'd on other grounds,* 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265(1988). The Arkansas procedure used in *Nelson* required the state to prove four prior convictions beyond a reasonable doubt in a jury proceeding. The Eighth Circuit noted that although Arkansas courts held that the habitual offender proceeding merely enhanced punishment and did not constitute a separate offense, the Double Jeopardy Clause nonetheless applied because the habitual sentencing procedure "constituted a trial on the issue of punishment." *Id.* at 450 n. 7. The Eighth Circuit determined that the habitual offender proceeding was trial-like because the jury determined whether the prosecutor had proven the existence of the prior convictions beyond a reasonable doubt, and the defendant was permitted to present evidence controverting the state's evidence of the prior convictions. *Id.*

The Ninth Circuit also has extended the *Bullington* rationale to non-capital sentence enhancement proceedings. In *Durosko v. Lewis,* 882 F.2d 357, 359 (9th Cir.1989), *cert. denied,* 495 U.S. 907, 110 S.Ct. 1930, 109 L.Ed.2d 294 (1990), the court held that the Arizona habitual offender scheme was sufficiently trial-like for the Double Jeopardy Clause to apply. The Court stated that applying the Double Jeopardy Clause to the sentence enhancement proceedings, regardless of procedural and timing differences between those proceedings and the Missouri proceeding in *Bullington,* was consistent with "the thrust of *Bullington,* that the prosecution should not have a second opportunity to prove what it failed to prove once." *Id.* at 359 n. 3. However, the court held that the second sentence enhancement proceeding in that case was not prohibited by the Double Jeopardy Clause because it involved a different enhancement statute than the statute involved in the first sentence enhancement in the case, on which the district court had directed a verdict in the defendant's favor. *Id.* at 361.

The Kentucky persistent felony offender sentencing scheme has many of the hallmarks of a trial. The prosecutor must prove the existence of the previous convictions beyond a reasonable doubt. *McGuire v. Commonwealth,* 885 S.W.2d 931, 936–37 (Ky. 1994). A separate hearing is held, and the statute provides that the court may even call a separate jury to consider a defendant's persistent felony offender status if the court believes such action to be necessary. Ky. Rev.Stat.Ann. § 532.080(1) (Baldwin 1995). The defendant presumably may present evidence rebutting the existence of the prior felony convictions presented by the Commonwealth, such as that the defendant had been pardoned, and in some circumstances, the defendant may offer evidence of the invalidity of the prior convictions. *McGuire,* 885 S.W.2d at 937 (in a Kentucky persistent felony offender proceeding, the defendant may collaterally attack a prior conviction if the defendant was denied counsel when the prior conviction was obtained). *See also Parke v. Raley,* 506 U.S. 20, 21–23, 32–34, 113 S.Ct. 517, 519, 525, 121 L.Ed.2d 391 (1992) (Kentucky law allows persistent felony offender to challenge prior convictions on grounds of

their invalidity). Finally, the factfinder in a Kentucky persistent felony offender proceeding has limited discretion—it may either find the defendant guilty as a first-degree persistent felony offender or as a second-degree persistent felony offender, or it may acquit the defendant of persistent felony offender status. The Kentucky persistent felony offender proceeding certainly is not as extensive as the death penalty sentencing proceeding held to invoke the Double Jeopardy Clause in *Bullington,* but it contains many of the trial-like elements that caused the Supreme Court to require Double Jeopardy Clause protection in capital sentencing proceedings.

The majority here relies on *Montgomery v. Bordenkircher,* 620 F.2d 127 (6th Cir.), *cert. denied,* 449 U.S. 857, 101 S.Ct. 155, 66 L.Ed.2d 71 (1980), for the proposition that the Double Jeopardy Clause "is inapplicable" to the Kentucky persistent felony offender sentencing proceeding because the Kentucky persistent felony offender statute defines a status and not a separate offense. *Montgomery,* however, is a pre-*Bullington* decision in which a defendant's prior felony convictions were successfully used in two cases to enhance his sentences for two completely unrelated crimes. The *Montgomery* court's primary holding is that the Kentucky persistent felony offender statute's use of prior convictions to enhance punishment more than once does not violate the Double Jeopardy Clause. The fact that the Kentucky statute is viewed as establishing a status, instead of as a separate offense, does not provide the answer to this case.

Carpenter's case is completely different from *Montgomery.* The Commonwealth here failed in its first attempt to convince a jury that Carpenter was a first-degree persistent felony offender. The first jury convicted Carpenter only as a second-degree persistent felony offender. In a second separate trial, using the identical prior convictions, the Commonwealth tried again to convince a second jury that Carpenter was a first-degree persistent felony offender. It is the second trial of the previously fully litigated *and lost* issue of persistent felony offender status based on the same course of conduct that violates the Double Jeopardy

Clause here. This case is *not* the repeated use of a finding of a particular persistent felony offender status, which was the *Montgomery* situation. Although *Montgomery* holds that the same crimes may lead to punishment as a particular degree of habitual offender in more than one case, there is nothing in *Montgomery* that suggests that the government may repeatedly try to establish a particular degree of persistent felon status based on the same evidence when the government already has tried *and failed* to convict a defendant of that degree of habitual offender status based on those same crimes.

While the majority certainly is correct that "the anxiety and ordeal suffered by a defendant during a death penalty proceeding" is greater than that suffered by a defendant in a persistent felony offender proceeding, a persistent felony offender proceeding does have significant effects on a defendant. A first-degree persistent felony offender conviction enhances the sentence for a defendant like Carpenter to a term of ten to twenty years, while a second-degree persistent felony offender conviction enhances a defendant's sentence to the statutory maximum range for the next higher class of felony. Ky.Rev.Stat. Ann. §§ 532.080(5),(6) (Baldwin 1995). Therefore, the second persistent felony offender proceeding in this case, in which Carpenter was convicted as a first-degree persistent felony offender, could have added a significant amount of time to the sentence Carpenter would have received as a second-degree persistent felony offender. Since many aspects of a persistent felony offender proceeding are similar to the capital sentencing proceeding described in *Bullington,* the Double Jeopardy Clause should apply to Kentucky persistent felony offender proceedings.

Because the second proceeding relitigating the previously determined issue of Carpenter's degree of persistent felony offender status is prohibited by the collateral estoppel element of the Double Jeopardy Clause, I respectfully **DISSENT**.