(953 P.2d 1379)
No. 76,951

STATE OF KANSAS, *Appellee*, v. RUSSELL MAGGARD, *Appellant*.

Opinion filed February 20, 1998.

*James Brent Getty*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Steven J. Obermeier*, assistant district attorney, *Paul J. Morrison*, district attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before PIERRON, P.J., GREEN, J., and GENE B. PENLAND, District Judge Retired, assigned.

PENLAND, J.: Russell Maggard challenges the sentence imposed by the district court pursuant to the Habitual Criminal Act (HCA).

On January 9, 1991, Maggard was convicted of two counts of arson for acts committed in 1988. The district court sentenced him to two consecutive terms of 5 to 10 years. The court then enhanced Maggard's sentences to two consecutive prison terms of 10 to 20 years, pursuant to the HCA.

On appeal, this court reversed Maggard's sentences and remanded for resentencing. In *State v. Maggard*, 16 Kan. App. 2d 743, 756, 829 P.2d 591, *rev. denied* 251 Kan. 941 (1992), we ruled that the State had failed to present sufficient evidence to warrant imposition of the HCA.

On June 2, 1993, the district court resentenced Maggard and imposed the same sentences under the HCA. Maggard appealed. Both parties subsequently filed a joint motion to reverse the district court based on *State v. Richard*, 252 Kan. 872, 850 P.2d 884 (1992). The parties stipulated that the district court had failed to make findings consistent with K.S.A. 21-4601 and K.S.A. 1993 Supp. 21-4606. This court vacated Maggard's sentences and remanded.

The State again moved to impose the HCA at the resentencing hearing. Maggard objected on double jeopardy grounds. To establish Maggard's criminal history, the State offered into evidence three journal entries of felony convictions in Missouri. Maggard objected to the admission of the journal entries. The district court ruled that the State had presented sufficient evidence to sentence Maggard under the HCA. It reimposed Maggard's original sentences. The district court also computed what Maggard's sentence would be had the crime occurred on or after July 1, 1993, under the Kansas Sentencing Guidelines Act (KSGA). The district court determined that Count I fell into grid box 5-B and Count II fell into grid box 7-I. Maggard objected to the severity level the court assessed for Count I. He now appeals the sentences imposed by the district court.

Maggard first contends that double jeopardy protections prohibit the State from attempting to enhance a defendant's sentence under the HCA when it failed to present sufficient evidence justifying enhancement in a prior proceeding.

At Maggard's original sentencing, the State moved to impose the HCA. The court granted the motion and sentenced Maggard under the HCA. On appeal, this court reviewed the evidence presented by the State to justify imposition of the HCA. It noted that the State used the following evidence: (1) the testimony of the author of the presentence investigation report; (2) the testimony of a deputy sheriff of Johnson County; and (3) a certified document from Missouri that provided minimal details of the defendant's Missouri convictions. This court found the evidence insufficient to establish Maggard as a habitual criminal. *Maggard*, 16 Kan. App. 2d at 754. Maggard contends the State had one chance to provide sufficient evidence to justify sentencing him under K.S.A. 21-4504, and its attempt to present further evidence following our determination it had failed to prove its case in the prior proceeding violates his protections against double jeopardy. Determining whether a violation of the Double Jeopardy Clause has occurred involves a question of law over which this court has unlimited review. See *State v. Holt*, 260 Kan. 33, Syl. ¶ 5, 917 P.2d 1332 (1996).

No published opinion in Kansas has discussed double jeopardy implications when an appellate court remands a sentencing determination based on insufficient evidence. Our appellate courts have remanded sentencing cases to allow the State another opportunity to offer sufficient evidence, without commenting on the double jeopardy implications of such remand. Indeed, in Maggard's prior appeal, this court expressed the possibility that the defendant might be resentenced under the HCA. *Maggard*, 16 Kan. App. 2d at 755-56.

*State v. Strickland*, 23 Kan. App. 2d 615, 933 P.2d 782 (1997), *rev. denied* 262 Kan. 968 (1997), involved the second appeal of a defendant who challenged the determination of his criminal history. In the prior appeal, this court determined the State had failed to establish defendant's criminal history because its documentary evidence did not meet the authentication requirements. *State v. Strickland*, 21 Kan. App. 2d 12, 900 P.2d 854 (1995). On remand, the State presented the authenticating documents. Without raising the double jeopardy issue explicitly, defendant argued the State could not introduce additional evidence during resentencing when it had failed to produce sufficient evidence at the original sentence enhancement proceeding. We rejected defendant's arguments and noted "the connotation of an appellate court remanding for resentencing is such that the entire sentencing process is to occur again, unless directed otherwise." 23 Kan. App. 2d at 623. The opinion did not address, however, the precise double jeopardy issue Maggard now raises or discuss the cases he cites in support of his contention.

"The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall be subject to be twice put in jeopardy of life or limb for the same offense. The Clause is enforceable against the states via the Fourteenth Amendment. *North Carolina v. Pearce*, 395 U.S. 711, 717, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969). Equivalent double jeopardy protection is found in Section 10 of the Kansas Constitution Bill of Rights. See *State v. Cady*, 254 Kan. 393, 396-97, 867 P.2d 270 (1994). The Double Jeopardy Clause shields persons from '(1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.' 254 Kan. at 396." *Holt*, 260 Kan. at 44-45.

In *North Carolina v. Pearce*, 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969), the defendants appealed their original convictions and on retrial received greater sentences. The Court held that neither the Double Jeopardy Clause nor the Equal Protection Clause imposes an absolute bar to a more severe sentence upon a reconviction. The *Pearce* Court did recognize, however, that the Due Process Clause prevents a trial court from increasing a sentence based on vindictiveness towards a defendant who has successfully attacked a conviction. 395 U.S. at 723-26.

*Burks v. United States*, 437 U.S. 1, 57 L. Ed. 2d 1, 98 S. Ct. 2141 (1978), addressed a somewhat different double jeopardy issue. In that case, a jury convicted the defendant, but the appellate court overturned the conviction based on insufficient evidence. The Court held that the State could not retry the defendant. It characterized the reversal as an implied acquittal. "The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." 437 U.S. at 11.

"Since we necessarily afford absolute finality to a jury's verdict of acquittal—no matter how erroneous its decision—it is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty." 437 U.S. at 16.

The Supreme Court again addressed the double jeopardy implications in sentencing in *United States v. DiFrancesco*, 449 U.S. 117, 66 L. Ed. 2d 328, 101 S. Ct. 426 (1980). The government sought to enhance the defendant's sentence under the "dangerous special offender" statute, 18 U.S.C. § 3575 (1976). The court increased the sentence by 1 year. The State appealed, arguing the lower court abused its discretion by pronouncing an enhanced sentence of only 1 year. DiFrancesco argued the government's appeal placed him in double jeopardy. The Court held that double jeopardy did not apply. It ruled that the government could attempt to enhance the sentence further in another proceeding, noting that "the pronouncement of sentence has never carried the finality that attaches to an acquittal." 449 U.S. at 133.

In *Bullington v. Missouri*, 451 U.S. 430, 68 L. Ed. 2d 270, 101 S. Ct. 1852 (1981), the Supreme Court applied the rationale of *Burks* and created an exception to the principle that double jeopardy does not apply to sentencing proceedings. Bullington was convicted of capital murder by a jury. Missouri law provided only two possible sentences for capital murder—death or life imprisonment. The statutes in effect at the time required the trial court to hold a separate presentencing hearing for a capital murder defendant. At the hearing, the court was required to use the same jury that convicted the defendant. The jury received evidence regarding mitigating or aggravating circumstances of the crime. A jury that imposed the death penalty had to designate in writing the aggravating circumstances it found beyond a reasonable doubt. It also had to be convinced beyond a reasonable doubt that the aggravating circumstances justified imposition of the death penalty. If the jury could not reach a unanimous decision, the defendant would receive life imprisonment. 451 U.S. at 434-35.

Bullington's jury rejected the death penalty for life imprisonment. The court subsequently granted Bullington a new trial. The State again sought the death penalty and specified its intent to rely on the same aggravating circumstances it sought to prove at the first trial. The trial court ruled the State could not do so without violating double jeopardy. The United States Supreme Court agreed.

The Court began its analysis by noting the well-established rule that the Double Jeopardy Clause forbids the retrial of a defendant who has been acquitted of the crime charged. It also noted the Court's resistance to extending that principle to sentencing.

"The imposition of a particular sentence usually is not regarded as an 'acquittal' of any more severe sentence than could have been imposed. The Court generally has concluded, therefore, that the Double Jeopardy Clause imposes no absolute prohibition against the imposition of a harsher sentence at retrial after a defendant has succeeded in having his original conviction set aside. [Citations omitted.]" 451 U.S. at 438.

The Court concluded, however, that the principle should not apply when the sentencing proceeding involved resembles a trial on the issue of guilt or innocence.

The Court looked at the Missouri death penalty proceedings as set out by statute and focused on the fact that in such proceedings, a jury only had two choices of punishment—death or life imprisonment. It also emphasized that in Missouri, the State had to establish aggravating circumstances justifying the death penalty beyond a reasonable doubt. In *DiFrancesco*, the government only had to prove the defendant's offender status by a preponderance of the evidence. The Court also discussed the difference in anxiety a defendant feels at a death penalty proceeding as compared to other sentencing hearings. It equated such anxiety with that experienced by a defendant during the guilt phase of a criminal trial. 451 U.S. at 440-46.

The Court concluded that a death penalty proceeding in Missouri resembled a trial on the issue of guilt or innocence. It then discussed the *Burks* principle that the State may not retry a defendant when a reviewing court has reversed the conviction based on the State's failure to present sufficient evidence. The Court read the jury's decision to choose life imprisonment for Bullington as an implied acquittal of the charge that Bullington's actions warranted the death penalty. Just as the State cannot attempt to convict a defendant on a charge of which he or she has been acquitted, the Court held that the State could not attempt to impose a sentence for an offense of which the defendant had been "acquitted." The Court noted that in the usual sentencing proceeding, it is impossible to conclude that a sentence less than the statutory maximum amounts to a decision to the effect that the State has failed to prove its case. However, "[b]y enacting a capital sentencing procedure that resembles a trial on the issue of guilt or innocence . . . Missouri *explicitly requires* the jury to determine whether the prosecution has 'proved its case.' " 451 U.S. at 444. "A verdict of acquittal on the issue of guilt or innocence is, of course, absolutely final. The values that underlie this principle . . . are equally applicable when a jury has rejected the State's claim that the defendant deserves to die." 451 U.S. at 445.

The Eighth Circuit extended the *Bullington* rationale to Missouri's persistent offender statute in *Bohlen v. Caspari*, 979 F.2d 109 (8th Cir. 1992), *rev'd on other grounds Caspari v. Bohlen*, 508

U.S. 971, 125 L. Ed. 2d 660, 113 S. Ct. 2958 (1994). The trial court sentenced Bohlen as a persistent offender. The appellate court affirmed the conviction but, finding no evidence of prior convictions in the record, reversed and remanded for a hearing to determine whether the State could prove Bohlen's persistent offender status beyond a reasonable doubt. The State presented evidence at the resentencing hearing, and the court again sentenced Bohlen as a persistent offender. The Eighth Circuit ruled that the State violated double jeopardy by attempting to prove Bohlen's status a second time.

The Eighth Circuit noted that the persistent offender sentencing procedure in Missouri had features similar to those in the capital sentencing hearing in *Bullington*. The persistent offender statute required that (1) the charging document plead all essential facts warranting a finding that the defendant is a persistent offender; (2) the evidence establish that the facts as pleaded warrant a finding beyond a reasonable doubt that the defendant is a persistent offender; and (3) the trial court make findings of fact that warrant a finding beyond a reasonable doubt that the defendant is a persistent offender. 979 F.2d at 112-13. The court concluded:

"[W]e find that *Bullington* dictates that the implicit acquittal rationale of *Burks* must apply to the Missouri persistent offender sentencing scheme to bar a second enhancement hearing where there has been a finding of insufficient evidence of persistent offender status. Missouri considers persistent offender sentencing serious enough to set up a statutory enhancement procedure with protections similar to a trial on guilt or innocence. That procedure is sufficiently similar to trial procedures that it triggers double jeopardy protection. In a persistent offender hearing, the trial court has two alternatives: to find that the defendant is a persistent offender beyond a reasonable doubt or not. The outcome of this decision greatly affects the possible length ·of the defendant's sentence. By placing the burden of proof beyond a reasonable doubt on the state, Missouri has indicated that the state should bear most of the risk of error. It is a hallmark of our system of jurisprudence that 'the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense.' [Citation omitted.]" 979 F.2d at 113.

The Fifth Circuit arrived at the same conclusion in the earlier case of *Bullard v. Estelle*, 665 F.2d 1347 (5th Cir. 1982), *judgment vacated on other grounds Estelle v. Bullard*, 459 U.S. 1139, 74 L.

Ed. 2d 987, 103 S. Ct. 776 (1983). After Bullard was convicted and sentenced, the appellate court held that the State's evidence was insufficient to sentence Bullard as a habitual offender. The State again attempted to establish Bullard as a habitual criminal. In considering the double jeopardy implications involved, the Fifth Circuit noted that the Texas proceedings required the State to prove the defendant's prior convictions beyond a reasonable doubt. The Fifth Circuit concluded that *Bullington* applied and that double jeopardy was violated.

The Sixth Circuit recently addressed the same issue in *Carpenter v. Chapleau*, 72 F.3d 1269 (6th Cir.), *cert. denied* 519 U.S. 835, 136 L. Ed. 2d 61 (1996). Carpenter was convicted on five different counts. The State introduced evidence that Carpenter had been convicted of four prior felonies for the purpose of sentencing him as a persistent felony offender. Under Kentucky law, proof of two or more prior felonies permitted a jury to find the defendant a persistent felony offender in the first degree (PFO I). Despite the evidence presented by the State, the jury convicted Carpenter of two counts of persistent felony offender in the second degree (PFO II), which required proof of only one prior felony conviction. Carpenter was convicted on another charge. To enhance the sentence, the State sought to convict Carpenter of being a PFO I by introducing evidence of three of the same prior felony convictions it had introduced as evidence in the first trial. The jury convicted him of PFO I, and his sentence was enhanced.

Carpenter appealed, claiming the State had violated his protection against double jeopardy by convicting him of being a PFO I after a jury had refused to convict him of that status in a prior proceeding. He claimed that the first jury's PFO II determination amounted to an implicit acquittal of PFO I status. The Sixth Circuit disagreed:

"It is true that PFO proceedings in Kentucky share some characteristics of Missouri's death penalty proceedings discussed in *Bullington*. As in *Bullington*, the state must prove each element of PFO status beyond a reasonable doubt . . . and the PFO status is determined in a separate proceeding. [Citation omitted.] However, we are unconvinced that the anxiety and ordeal suffered by a defendant

during a death penalty proceeding are in any respect comparable to those experienced by a defendant in a PFO proceeding." 72 F.3d at 1273-74.

The court continued:

"In a death penalty trial, the jury considers facts bearing on the guilt or innocence of the accused and circumstances surrounding the underlying crime. In Kentucky's sentence enhancement proceedings, however, the jury's determination of PFO status is completely independent of the facts surrounding the underlying crime for which the defendant was convicted. We do not believe the Double Jeopardy Clause is implicated in such a proceeding." 72 F.3d at 1274.

The Sixth Circuit cited the New Mexico case decided by the Tenth Circuit, *Linam v. Griffin*, 685 F.2d 369 (10th Cir. 1982), *cert. denied* 459 U.S. 1211 (1983). In that case the court refused to apply *Bullington* and permitted a retrial on a sentence enhancement charge because the government's sentence enhancement convictions were overturned for trial error. The *Linam* case thus differs from this one in that the reviewing court did not base reversal on insufficiency of the evidence.

*Bullington* and the cases that followed indicate that double jeopardy may apply when a sentencing proceeding involves a hearing comparable to a trial determining guilt or innocence. The HCA in effect at the time of Maggard's offenses does not call for such proceedings. K.S.A. 21-4504 (Ensley 1988) sets out a range of sentences a court could impose upon a finding that the defendant had prior felony convictions. A judge, not a jury, makes the determination of whether a defendant constitutes a second or third offender, and the State has only to present competent evidence of the former convictions; it does not have to meet the "beyond a reasonable doubt" standard. The *Bullington* rule should not apply given the differences between Kansas' sentencing procedure under the HCA and the procedures used in jurisidictions involving trial-like proceedings. Unlike the death penalty proceeding in *Bullington*, a court considering imposition of the Kansas HCA does not consider facts relating to the underlying crime. The guilt of the defendant as to the underlying crime has been established; the court need only determine the defendant's status as an offender, and it does this in a very nontrial-like procedure.

Maggard's contentions must fail. Double jeopardy considerations do not prevent the State from attempting to establish the defendant's status as a habitual offender, even when it provided insufficient evidence in a prior proceeding.

Maggard next contends the State failed to present sufficient evidence during resentencing to support imposing the HCA against him.

At the resentencing hearing, the State presented certified and authenticated copies from Missouri of the complaints and journal entries identifying three felony convictions for Russell Maggard. One document from Douglas County, Missouri, showed that in 1965, "Russell Maggard" pleaded guilty to felony stealing. A journal entry from another county shows that in 1968, "Russell Ray Maggard" pleaded guilty to first-degree murder. A journal entry from Clay County, Missouri, showed that in 1989, "Russell R. Maggard" was convicted of one count of first-degree arson, one count of second-degree arson, one count of stealing a motor vehicle, and one count of first-degree property damage. When the State offered the exhibits into evidence, defense counsel objected on the grounds of hearsay and relevance. Maggard's counsel stated, "We would object to [State's exhibit] 1, 2 and 3 also on grounds of relevance. And yes, those documents cited a defendant by the name of Russell Maggard, but without more to relate those documents to my client all we have is shared similarity in names and that's insufficient."

In *State v. Strickland*, 21 Kan. App. 2d 12, 14, 900 P.2d 854 (1995), this court held that copies of documents coming from courts of other states need to be certified or attested, as well as comply with authentication requirements. In this case, the State presented certified and authenticated copies of complaints and journal entries to prove criminal history. "Generally, proof of prior felony convictions to invoke the Habitual Criminal Act [21-4504] is made by using certified or authenticated copies of journal entries of convictions from other states or counties. This is the best possible evidence of a prior felony conviction." *Maggard*, 16 Kan. App. 2d at 753. "Absent a denial of identity or rebuttal evidence, proof beyond the identity of the name in the document is not required

for admission of the evidence. [Citation omitted]. . . . Additionally, 'identity of name is prima facie evidence of identity of person,' and proof must be offered to overcome that presumption. [Citation omitted.]" *State v. Greever*, 19 Kan. App. 2d 893, 900, 878 P.2d 838 (1994).

Maggard contends the certified and authenticated documents from Missouri do not constitute sufficient competent evidence because he sufficiently raised the issue of identity at the resentencing. Maggard confuses raising the issue of identity with denying identity. He never denied he was the Russell Maggard who committed the crimes identified in the Missouri documents. Defense counsel merely asserted that the State's evidence was insufficient to establish identity.

In *Greever*, this court considered the defendant's claim that the trial court abused its discretion by invoking the HCA because it did not have competent evidence of prior convictions. Greever argued that because he did not concede the issue of identity, the journal entries of conviction did not amount to sufficient evidence proving that he had committed prior crimes. The court disagreed and noted that Greever did not deny that he was the same person named in the journal entries. "Greever's attorney only noted that 'there's been no proof, no evidence submitted that this defendant is the same defendant that was in the charges that they've provided exemplary copies to, and I think it's incumbent upon the State to prove that the defendant did commit those three offenses.' " 19 Kan. App. 2d at 900. The court ruled: "Given the similarity in names, the admissions by Greever's counsel, the lack of denial of identity, and the failure to provide any rebuttal evidence as to identity, admission of these journal entries as evidence of prior convictions was not an abuse of judicial discretion." 19 Kan. App. 2d at 901.

As in *Greever*, defense counsel in this case did not deny that his client was the one identified in the Missouri documents; nor did Maggard present any rebuttal evidence to overcome the presumption created by the similarity of names that he committed the crimes described in the journal entries.

In addition to noting the similarity and unusual nature of the names, the district court also based its ruling on information contained in the presentence investigation report:

"[I]n addition to that, I note that in the presentence investigation the defendant recounted to the presentence investigators apparently that he had obtained his GED in December of 1975 while incarcerated in the Missouri Department of Corrections. Also, under Employment, the defendant reports being employed by Gaines Poultry shortly after being granted parole in 1987. These entries in the presentence investigation and facts reflected in the presentence investigation are consistent with the periods of incarceration and the places of incarceration reflected by State's Exhibits 1, 2, and 3. And I think that adds weight to the proposition that these convictions relate to this defendant. And the Court finds that the State has sustained the burden of proof and established these convictions."

The district court did not abuse its discretion in finding the State had presented competent evidence justifying imposition of the HCA. The court considered the certified and authenticated journal entries, as well as other corroborating evidence.

Finally, Maggard contends the court erred in finding one of the arson counts to be a severity level 5 offense.

Because resentencing occurred after July 1, 1993, the district court computed what Maggard's KSGA sentence would be had the crime occurred on or after July 1, 1993, as K.S.A. 21-4724(f) requires. The district court determined that Count I fell into grid box 5-B and Count II fell into grid box 7-I.

Maggard was convicted of two counts of arson in violation of K.S.A. 21-3718 (Ensley 1988) for acts committed in 1988. Count I involved a fire at the Hawthorne subdivision in Overland Park, and Count II involved a fire at the Westbury subdivision. The statute in effect at that time classified arson as a class C felony and made no distinction based on the amount of damage to the property involved. K.S.A. 21-3718 (Ensley 1988). The legislature amended the arson statute following passage of the KSGA. The statute now classifies arson as a severity level 5 nonperson felony if the property is damaged to the extent of $50,000 or more; severity level 6 nonperson felony if the damage is between $25,000 and $50,000; severity level 7 nonperson felony if the damage is less than $25,000. K.S.A. 21-3718. Because Maggard was charged prior

to the amendments, the complaint against him does not allege the amount of property damage involved in the two counts.

A similar problem occurred in *State v. Whitaker*, 260 Kan. 85, 917 P.2d 859 (1996). Whitaker was convicted of aggravated battery against a law enforcement officer. Although Whitaker committed his crimes prior to the effective date of the KSGA, the resentencing occurred after the KSGA took effect. In compliance with K.S.A. 21-4724(f), the sentencing judge computed the appropriate KSGA sentence and assigned a severity level of 3 to the aggravated battery against a law enforcement officer offense.

The elements of aggravated battery against a law enforcement officer changed with the enactment of the KSGA. The amended statute changed the definitions of aggravated battery against a law enforcement officer and assigned different severity levels to the various manners in which the crime could be committed. The statute as amended assigned a severity level of 3 if the crime was committed by " 'intentionally causing great bodily harm to another person or disfigurement of another person.' " 260 Kan. at 91.

The Supreme Court considered whether the sentencing court properly classified Whitaker's offense as a severity level 3 crime. In support of his contention that the severity level should be 6 and not 3, Whitaker pointed out that the State did not charge or prove at trial the element of "intentionally causing great bodily harm or disfigurement." In analyzing the issue, the court commented:

"Under *Fierro*, 257 Kan. 639, Syl. ¶ 5, and our later decision in *Farris v. McKune*, 259 Kan. 181, Syl. ¶ 2, 911 P.2d 177 (1996), we decided that in applying K.S.A. 21-4724, the Department of Corrections (DOC) or the sentencing judge must convert a pre-KSGA crime to an analogous post-KSGA crime. The sentencing judge is required to compute the guidelines classification 'by looking at actual conduct and by applying the actual acts committed to the comparable crime in effect after July 1, 1993.' *Fierro*, 257 Kan. at 651. Any uncontested information may be considered to determine what the actual conduct of the offender was. *Farris*, 259 Kan. 181, Syl. ¶ 3. Here, even though it was unnecessary for the State to prove an intent to cause great bodily harm for Whitaker to be convicted of aggravated battery against a law enforcement officer, if the facts show such an intent Whitaker's crime may be assigned a severity level of 3 based on that intent." 260 Kan. at 92-93.

The court then reviewed the facts in the record and found evidence that Whitaker possessed an intent to cause great bodily harm. The court concluded that a severity level 3 was proper.

In this case, the court received evidence at the resentencing hearing concerning the damage resulting from Maggard's acts. James Bynan operated the business of Aurora Homes, Inc., and owned the duplex structure in the Hawthorne subdivision that the defendant destroyed by fire in 1988. He testified that the damage to the two homes amounted to $170,000 each. Chief Chuck Backer, who served at the Overland Park Fire Department at the time of the fires, testified that the defendant had been convicted of setting the Hawthorne fire, as well as starting a fire at a residence in the Westbury subdivision, where the extent of damage was less than $50,000.

The trial court properly classified Count I as a severity level 5 felony because the amount of damage involved exceeded $50,000. It also properly classified Count II as a severity level 7 felony because the State ultimately did not prove that damages exceeded $25,000.

Affirmed.