Russell R. MAGGARD, Petitioner,

v.

James A. GAMMON, Warden and Carla Stovall, Attorney General, Respondents.

No. 01–3081–DES.

United States District Court, D. Kansas.

April 22, 2002.

Russell R. Maggard, Moberly, MO, Pro se.

Jared S. Maag, Office of the Attorney General, Topeka, KS, for Respondents.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on a Petition for a Writ of Habeas Corpus (Doc. 1) brought by a person in state custody pursuant to 28 U.S.C. § 2254. Respondents have filed an Answer and Return (Doc. 6), and petitioner has filed a Traverse (Doc. 7). Petitioner seeks federal habeas relief from his state convictions. For the following reasons, petitioner's request shall be denied.

## I. BACKGROUND

### A. Factual History

On August 10, 1988, the District Attorney's Office in Johnson County, Kansas, charged petitioner with two counts of arson. The first count alleged petitioner intentionally damaged homes in the Hawthorne Subdivision in Overland Park, Kansas, by means of fire on February 7, 1988. The second count alleged petitioner intentionally damaged homes in the Westbury Subdivision in Overland Park, Kansas, by means of fire on June 19, 1988.

During a preliminary hearing, the State moved to admit evidence of previous fires set by petitioner pursuant to Kansas Statutes Annotated § 60–455.[1] The State's motion alleged the prior fires were set in Missouri by petitioner with assistance from his associate, Jesse Kirkland ("Kirkland"). The evidence was eventually admitted at the preliminary hearing and later at trial.

At trial, Kirkland testified he had known petitioner for three to five years. (Trial Tr. at 119). During that time, petitioner and Kirkland had resided together and later lived in the same apartment complex. (*Id.* at 120). According to Kirkland, he had driven petitioner to the site of both fires charged in the Johnson County complaint as well as to several uncharged fires across the border in Missouri. (*Id.* at 124, 132–36). As to the Westbury fires, Kirkland testified as follows:

Answer: We went to Overland Park with the house with the silo.

.　　.　　.　　.　　.

Question: And with regard to this silo, what happened on that occasion?

Answer: That occasion had been sometime before that. That earlier in the year, probably around January, February that I would give him a ride out there, parked the vehicle by the silo, walked up over the hill, came back anywhere from 30 to 45 minutes later after the house had been set.

Question: How do you know the house had been set?

Answer: There was a lot of smoke that was perfectly visible, and from just what he had told me he had made it very clear.

(*Id.* at 134). Additionally, as to the Hawthorne fires, Kirkland testified that after driving with petitioner to the site, "[petitioner] went over and set those on fire."

---

1. The State alleged the prior bad act evidence was being offered for the purpose of proving identity. The state statute reads:

    Subject to K.S.A. 60–447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60–445 and 60–448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

    Kan.Stat.Ann. § 60–455.

(*Id.* at 135). Although Kirkland drove petitioner to the sites, he testified he never personally participated in setting the fires. (*Id.* at 149–50).

Kirkland's cooperation with the State was the result of Kirkland wanting to participate with authorities after his arrest in Gladstone, Missouri, on July 22, 1988. Kirkland informed the police he was willing to divulge information regarding several area arsons in exchange for leniency in his unrelated legal problems.

In addition to several law enforcement officers and fire investigators, the State also called Della McDonald ("McDonald"). McDonald was in an intimate relationship with Kirkland during the times relevant to the charged arsons. (*Id.* at 254). McDonald testified to being present for conversations between petitioner and Kirkland concerning certain fires. (*Id.* at 247). According to McDonald, she overheard the two men discussing the charged fires in Overland Park, Kansas, as well as the uncharged fires located in Missouri. (*Id.* at 247–52). As to petitioner's possible motive for starting the fires, McDonald testified as follows: "I don't know if you could refer to it as motives. I think from what I understood between conversations between them, it was like kind of meanness.... Well, he had an extreme dislike for law enforcement people." (*Id.* at 251).

## B. Procedural History

On January 9, 1991, the jury returned guilty verdicts against petitioner on both charged counts. On February 22, 1991, petitioner was sentenced to two consecutive terms of five to ten years. This sentence was then doubled under Kansas' Habitual Criminal Act, Kansas Statutes Annotated § 21–4504, to consecutive terms of ten to twenty years, for a controlling term of twenty to forty years.

On direct appeal, petitioner's convictions were affirmed but the Kansas Court of Appeals ("KCOA") remanded petitioner's case for resentencing. *State v. Maggard,* 16 Kan.App.2d 743, 829 P.2d 591 (1992). On appeal, petitioner raised the following arguments:

Issue I: The trial court erred when it denied the defendant's motion to dismiss on speedy trial grounds after the State failed to bring the defendant to trial within 180 days after the defendant filed his demand for trial pursuant to the Uniform Disposition of Detainers Act.

Issue II: The district court erred in permitting the State to introduce evidence of prior crimes and bad acts allegedly committed by defendant.

   A. The district court erred in permitting the State to introduce evidence pursuant to K.S.A. 60–455 for the purpose of identity.

   B. The district court erred in permitting the jury to hear evidence of prior crimes and bad acts allegedly committed by the defendant before a hearing pursuant to K.S.A. 60–455.

Issue III: The district court erred in granting the State's Motion to Invoke the Habitual Criminal Act.

Issue IV: The trial court erred when it ordered the defendant to pay restitution in the amount of $132,000.

Appellant Br. at 5–6, *State v. Maggard,* 16 Kan.App.2d 743, 829 P.2d 591 (1992) (No. 66, 627). In rejecting petitioner's substantive arguments, the KCOA specifically found that the prior bad acts evidence was properly admitted. *Maggard,* 829 P.2d at 596–98. However, the KCOA remanded the case because the trial court imposed a habitual sentence without competent evidence of petitioner's prior convictions. *Id.* at 599–600. The Kansas Supreme Court denied review on June 4, 1992.

On June 2, 1993, petitioner was resentenced by the trial court to the same twenty to forty year controlling sentence. On appeal, the parties filed a joint motion to reverse the trial court's sentence. Therefore, the KCOA vacated petitioner's sentence and remanded for resentencing because the trial court "abused its discretion by sentencing [petitioner] without articulating a statutory basis for its discretionary conclusion." *State v. Maggard,* 889 P.2d 1161 (Kan.Ct.App.1995) (unpublished opinion).

On February 23, 1996, petitioner was resentenced, and, again, the trial court imposed the same controlling sentence of twenty to forty years. This time, however, the KCOA later affirmed petitioner's sentence. *State v. Maggard,* 24 Kan.App.2d 868, 953 P.2d 1379 (1998). On appeal, petitioner raised the following arguments:

Issue I: Whether the double jeopardy clause bars the State from bringing any enhancement proceeding pursuant to K.S.A. 21–4504, the Habitual Criminal Act, where the State has previously failed to prove its case under K.S.A. 21–4504 in an early [sic] proceeding in connection with the same primary offense.

Issue II: Whether the Missouri journal entries offered into evidence at sentencing sufficiently prove the identity of Mr. Maggard as the person convicted in those cases.

Issue III: Whether the district court erred in computing Mr. Maggard's guidelines sentences by basing that determination on testimony presented at the sentencing hearing.

Appellant Br. at 1, 12, *State v. Maggard,* 24 Kan.App.2d 868, 953 P.2d 1379 (1998) (No. 76, 951). On April 28, 1998, the Kansas Supreme Court denied review.

With petitioner's direct appeal concluded, on August 21, 1998, petitioner filed a post-conviction action pursuant to Kansas Statutes Annotated § 60–1507. In his § 1507 motion to the district court, petitioner raised the following arguments:

Ground One: The trial court lacked subject matter jurisdiction to try plaintiff, because plaintiff was not tried within the mandatory time period provided by the Detainer Act, denying plaintiff due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

Ground Two: Plaintiff was denied effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution because trial counsel (a) failed to object to and properly preserve the IADA violation issue; (b) failed to object to the 60–455 evidence being introduced at trial without a hearing; (c) failed to properly impeach and cross-examine Jesse Kirkland; (d) failed to investigate Jesse Kirkland's background; and (e) failing to question Della McDonald why Jesse Kirkland threaten [sic] her life.

Ground Three: Plaintiff was denied effective assistance of counsel on his direct appeal as guaranteed by the Sixth Amendment to the United States Constitution because appellate counsel (a) failed to preserve any of appellants [sic] issue for federal habeas corpus review; (b) failed to raise in appellate counsel's issue on 60–455 evidence that no hearing was held determining the admissibility of the evidence at trial; and (c) failed to raise the issue that the trial court denied plaintiff due process of law by sua sponte giving instruction no. 12—aiding and abetting.

Ground Four: Plaintiff was denied a fair trial and due process of law as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when the trial court admitted the 60–455 evidence at trial without holding the required hearing.

(Pet'r § 1507 Motion at 6, 15, 26, and 30). On September 28, 1998, the district court denied petitioner's motion.

Thereafter, on September 22, 2000, the KCOA affirmed the district court's denial of petitioner's § 1507 motion. *Maggard v. State,* 27 Kan.App.2d 1060, 11 P.3d 89 (2000). On appeal, in addition to re-raising his claims he made before the district court, petitioner also argued the district court erred in failing to appoint counsel to represent petitioner. Appellant Br. at 9, *Maggard v. State,* 27 Kan.App.2d 1060, 11 P.3d 89 (2000) (No. 84, 357). Petitioner's subsequent request for review was not timely filed with the Kansas Supreme Court. Therefore, petitioner filed a motion for leave to file his petition out of time, which the Kansas Supreme Court denied on November 15, 2000.

On March 5, 2001, petitioner filed the instant request seeking federal habeas relief pursuant to 28 U.S.C. § 2254.

## II. PETITIONER'S FEDERAL CLAIMS

Petitioner claims the following grounds justify federal habeas relief:

Ground I: The trial court lacked jurisdiction to try petitioner because the State failed to bring petitioner to trial within the 180 day or the 120 day provisions of the IADA.

Ground II: Denied due process and a fair trial by the trial court allowing the K.S.A. 60–455 evidence to be admitted at trial without holding the required hearing.

Ground III: Petitioner's direct appeal counsel was ineffective.

Ground IV: Petitioner's trial counsel was ineffective.

(Pet. for Writ at 6–11a).

## III. STANDARD OF REVIEW

Under 28 U.S.C. § 2254,[2] a federal court is precluded from granting habeas relief on any claim adjudicated by a state court, unless the state court's proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). *See Williams v. Taylor,* 529 U.S. 362, 405–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (construing the review standard in 28 U.S.C. § 2254).

A state court's decision is "contrary to" an established federal law if the state court reaches a different result than the Supreme Court would when presented with facts that are "materially indistinguishable from a relevant Supreme Court precedent" or if the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams,* 529 U.S. at 405, 120 S.Ct. 1495.

Additionally, the Supreme Court has clearly dictated that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Federal habeas actions do not provide relief for errors of state law. *Id.* (citing *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)).

---

**2.** Because petitioner filed his petition for habeas relief well after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the AEDPA applies to his petition. *See generally Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

## IV. DISCUSSION

### A. Detainers Act

The Interstate Agreement on Detainers Act ("IAD"), 18 U.S.C.App. § 2, is a compact entered into by forty-eight states, the District of Columbia, and the federal government. Kansas and Missouri are participating states. *See* Kan.Stat.Ann. §§ 22–4401 to 21–4408; Mo.Rev.Stat. §§ 217.490 to 217.520. The IAD's purpose is to allow a participating state to gain custody over a prisoner, currently in the custody of another jurisdiction, for purposes of prosecution. The IAD contains two speedy trial time constraints for the commencement of the prosecution of transferred prisoners. First, under Article IV(c), a transferred prisoner's trial "shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." Second, under Article III(a), a prisoner against whom a detainer has been lodged shall be tried within one hundred and eighty days of the prosecuting state's receipt of the prisoner's notice requesting speedy disposition of the charges.

■ Article V(c) of the IAD mandates that if the transferred prisoner is not brought to trial within the appropriate speedy trial time-limits, then "the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereupon shall cease to be of any fore or effect." Petitioner argues his Kansas trial was not commenced within 180 days of his properly requested disposition under Article III(a), so, according to petitioner, the trial court was without jurisdiction to try petitioner.

While considering this argument in 1992, the KCOA first explained the factual scenario concerning petitioner's transfer and subsequent trial.

At the time [petitioner] was charged with setting fires in Johnson County, Kansas, he was in the Missouri State Penitentiary (MSP) as a result of parole violations on a previous sentence. He was also facing arson charges in Jackson County, Missouri.

While in the MSP, [petitioner] filed speedy trial requests under the Uniform Agreement on Detainers Act, K.S.A. 22–4401 *et seq.* These requests were filed simultaneously with Kansas and Missouri on November 30, 1989.

The record shows that [petitioner]'s requests for a speedy trial were received in Kansas and Missouri on December 4, 1989. On December 28, 1989, Missouri had [petitioner] transported from MSP to the Jackson County jail to stand trial on pending arson charges. On January 18, 1990, Kansas attempted to transport [petitioner] from MSP to Kansas for trial on the instant charges. Kansas was advised that the defendant was not in MSP but was in the custody of the Missouri officials in Jackson County. On June 6, 1990, Jackson County returned [petitioner] to MSP. On June 11, 1990, Johnson County officials had [petitioner] transferred to Kansas to stand trial on the charges currently before this court.

During the preliminary hearing, the defendant moved for a dismissal of the charges on the grounds that Kansas had violated his speedy trial request. He argued that, pursuant to his speedy trial request, Kansas had 180 days from December 4, 1989, to place him on trial. Under this scenario, the defendant submits that the 180 day period expired on

June 1, 1990, and that he was entitled to a dismissal of the charges against him. *Maggard*, 829 P.2d at 593–94.

In the end, the KCOA concluded petitioner's act of simultaneous filing in two jurisdictions rendered dual compliance with the IAD virtually impossible. *Id.* at 595. According to the KCOA, "the speedy trial time period was tolled during the period of time [petitioner] was in the custody of Jackson County authorities." *Id.* Therefore, the 180–day period did not begin to run until June 6, 1990, the date on which petitioner was returned to MSP. *Id.* Because Kansas tried petitioner within 180 days of June 6th, the KCOA found no IAD violation. *Id.* at 595–96.

### 1. Recognized Claim

■ Before the court may review the KCOA's ruling, the court must first address whether petitioner's alleged IAD violation is cognizable within the context of federal habeas corpus pursuant to § 2254. The starting point for this analysis must necessarily be an acknowledgment that while the IAD is a matter of state law, it is simultaneously, by virtue of the federal government's accession, a matter of federal law—open to construction and interpretation by the federal courts. Therefore, the issue is not whether petitioner has presented a nonaddressable violation of state law, *see Estelle*, 502 U.S. at 67–68, 112 S.Ct. 475, but, rather, whether petitioner has presented a violation of federal law qualifying as "a fundamental defect

which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962) (finding that a technical violation of the Federal Rules of Criminal Procedure was not open to collateral relief).

In *Reed v. Farley*, 512 U.S. 339, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994) (plurality), the Supreme Court considered whether a state prisoner's claimed IAD violation was cognizable under § 2254. Writing for a divided court, Justice Ginsburg held "that a state court's failure to observe the 120–day rule of IAD Article IV(c) is not cognizable under § 2254 when the defendant registered no objection to the trial date at the time it was set, and suffered no prejudice attributable to the delayed commencement." *Id.* at 352, 114 S.Ct. 2291. The Court specifically opined, however, that it was not faced with the situation wherein the defendant had levied a contemporaneous objection before the state court. *Id.* at 349, 114 S.Ct. 2291 ("When a defendant obscures Article IV(c)'s time prescription and avoids clear objection until the clock has run, cause for collateral review scarcely exists.") (citing *Hill*, 368 U.S. at 429, 82 S.Ct. 468).[3]

The court is also guided by two published Tenth Circuit opinions on this issue. The first, *Greathouse v. United States*, 655 F.2d 1032 (10th Cir.1981), *cert. denied*, 455 U.S. 926, 102 S.Ct. 1289, 71 L.Ed.2d 469 (1982), concerned an alleged IAD violation brought by a federal prisoner pursuant to 28 U.S.C. § 2255.[4] As a secondary justifi-

---

**3.** In his concurrence, joined by Justice Thomas, Justice Scalia opined that any violation of the IAD, even accompanied by contemporaneous objection, "neither produces nor is analogous to (1) lack of jurisdiction of the convicting court, (2) constitutional violation, or (3) miscarriage of justice or denial of rudimentary procedures. It is no basis for federal habeas relief." *Reed*, 512 U.S. at 358, 114 S.Ct. 2291 (Scalia, J., concurring).

**4.** Although the *Greathouse* court was writing within the context of § 2255, as compared to § 2254, the court still finds the opinion authoritative. As the Supreme Court observed, "it is scarcely doubted that, at least where mere statutory violations are at issue, ' § 2255 was intended to mirror § 2254 in operative effect.' " *Reed*, 512 U.S. at 353, 114 S.Ct. 2291 (quoting *Davis v. United States*, 417 U.S. 333, 344, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974)).

cation for affirming the district court's denial of the § 2255 motion, the Tenth Circuit held that "rights created by the [IAD] are statutory, not fundamental, constitutional, or jurisdictional in nature." *Id.* at 1034. The opinion continues, "absent special circumstances, violations of the [IAD] are not grounds for collateral attack on a federal conviction and sentence under § 2255." *Id.*

■ The second opinion, *Knox v. Wyoming Dep't of Corr. State Penitentiary Warden,* 34 F.3d 964 (10th Cir.1994), *cert. denied,* 513 U.S. 1091, 115 S.Ct. 753, 130 L.Ed.2d 652 (1995), was published shortly after the Supreme Court's decision in *Reed* was rendered. In *Knox,* as in the present case, the Tenth Circuit was faced with a state defendant alleging an IAD speedy trial violation, which had been preserved through contemporaneous objection. *Id.* at 967 ("Of course, in the case before us petitioner did raise the 120–day IAD issue thirty days before it expired and before a

trial date had been set."). After recognizing the applicability of *Greathouse's* "special circumstances" test under § 2254, the circuit court considered whether the test was inconsistent with the Supreme Court's then recent opinion in *Reed.* In the end, the Tenth Circuit found *"Reed* supports our ruling in *Greathouse* that only 'special circumstances' permit collateral attack for violations of the IAD." *Id.*[5] In sum, the court finds itself where it first began, for the court interprets *Greathouse's* "special circumstances" test as equivalent to the "miscarriage of justice or inconsistent with fair procedure" test enunciated by the Supreme Court in *Hill v. United States. See also Lara v. Johnson,* 141 F.3d 239, 242–43 (5th Cir.1998) (finding that a § 2254 petitioner alleging an IAD violation must demonstrate "exceptional circumstances of a type which causes prejudice").

In accordance with the case law discussed above, the court finds petitioner's claim is not cognizable under § 2254, for

5. The court's reading of *Knox,* in the context of *Reed* and *Greathouse,* would seem to fairly settle this issue within the Tenth Circuit. This conclusion is shaken, however, by a more recent unpublished Tenth Circuit opinion, *Smith v. State,* 2000 WL 1869450, 242 F.3d 390 (10th Cir.2000). In *Smith,* the Tenth Circuit denied a state defendant's application for a certificate of appealability. Although the prisoner's original motion was actually brought pursuant to 28 U.S.C. § 2241, the circuit court noted that the defendant's allegations of an IAD violation were more appropriately brought under § 2254. *Id.* at *2 n. 4. The Tenth Circuit eventually found the defendant had failed to make a "substantial showing of a denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(3). *Id.* at *2. This holding was supported by the fact that the defendant had never complied with the IAD by delivering his notice and request for a speedy trial, so the IAD's 180–day period had never begun to run. *Id.*

What gives the court pause, is the following dicta:

Initially, we note that the circuit courts of appeal are split on the question whether

alleged violations of the [IAD] are cognizable under 28 U.S.C. § 2254. *This court has not yet decided the issue.* Even if we were to find, however, that an alleged violation of the [IAD] was cognizable under either § 2241 or § 2254, petitioner has not alleged facts sufficient to support a 'substantial showing of a denial of a constitutional right....'

*Id.* (citations omitted) (emphasis added).

Strangely absent from *Smith,* is any citation to either *Reed, Knox,* or *Greathouse.* The court is at a loss as to how to meld this opinion with the analytical framework set forth above. In any event, unpublished circuit opinions are not binding on this court, so the court gives no weight to the Tenth Circuit's language. *Compare Smith,* 2000 WL 1869450 at *2, *with Dobson v. Hershberger,* 1997 WL 543370, at *2, 124 F.3d 216 (10th Cir.1997) (unpublished) ("This circuit follows this approach in habeas corpus actions by requiring a showing of 'special circumstances' that drive the IAD violations to a level of depriving the defendant of some constitutionally protected right.").

his situation does not demonstrate any "special circumstances" warranting relief. Petitioner has not alleged the delay rendered his trial unfair or prevented him from mounting a defense. Furthermore, in the extreme, there is no indication the delay lead to the conviction of an innocent man. At best, petitioner's situation reveals only a technical violation of the IAD. Federal habeas review in such a case would necessarily render the "special circumstances" test powerless. For these reasons, the court declines to reach the merits of petitioner's claim. Therefore, the court need not take a position on the tolling decision handed down by the KCOA. All relief will be denied as to this issue.

### B. Prior Bad Acts

■ Petitioner's second ground for relief concerns the trial court's decision to admit evidence related to petitioner's participation in the uncharged Missouri fires. In particular, petitioner asserts he was denied due process when the trial court allowed such evidence without first conducting a hearing as required under state law. *See Maggard,* 829 P.2d at 598 (acknowledging some form of hearing is required in Kansas before a trial court admits evidence under Kansas Statutes Annotated § 60–455).

In rejecting petitioner's claim on direct appeal, the KCOA first found that while the trial judge declined to hold a hearing on this matter, another judge, who presided over the preliminary hearing, had heard oral argument on the issue and the trial judge was familiar with the motion and the proffered evidence. *Id.* at 598. Second, even if the preliminary hearing was insufficient, the KCOA found any error in not holding a second hearing was harmless because the disputed evidence was properly admitted under § 60–455. *Id.*

■ As respondents correctly note, a federal habeas court must consider alleged errors by state courts in this context with a critical eye. "As a general matter, federal habeas corpus relief does not lie to review state law questions about the admissibility of evidence, and federal habeas courts may not interfere with state evidentiary rulings unless the rulings in question rendered the trial so fundamentally unfair as to constitute a denial of federal constitutional rights." *Moore v. Marr,* 254 F.3d 1235, 1246 (10th Cir.2001) (internal citation and quotation marks omitted). *See Duvall v. Reynolds,* 139 F.3d 768, 787 (10th Cir. 1998) (" 'We will not disturb a state court's admission of evidence of prior crimes, wrongs or acts unless the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denied defendant due process of law.' ") (quoting *Hopkinson v. Shillinger,* 866 F.2d 1185, 1197 (10th Cir.1989)); *Tucker v. Makowski,* 883 F.2d 877, 881 (10th Cir.1989) (acknowledging allegedly erroneous admission of prior bad acts evidence is only reviewable if the evidence rendered the trial fundamentally unfair).

■ To the extent petitioner is arguing the admitted evidence rendered his trial fundamentally unfair, the court rejects petitioner's assertion. Without question, there was sufficient and compelling evidence admitted, which specifically implicated petitioner in the two charged offenses. On the other hand, the contested evidence was offered and admitted for the sole purpose of proving identity. To this end, the jury was instructed as follows: "Evidence has been admitted tending to prove that the defendant committed crimes other than the present crime charged. This evidence may be considered solely for the purpose of proving the defendant's identity." (Jury Instruction No. 11, Case No. K–57444). Petitioner has offered no per-

suasive argument for why the prejudicial nature of the evidence greatly outweighed its probative value.[6]

The court also rejects petitioner's allegation that he was denied due process of law when the trial court declined to convene a second hearing. Once again, petitioner has not presented any compelling argument for why the allegedly omitted hearing rendered his trial constitutionally infirm. At most, petitioner appears to only be arguing that the trial court failed to follow Kansas case law requiring some form of pretrial hearing before § 60–455 evidence may be admitted. However, as noted above, federal habeas relief is unavailable to remedy state law errors. *Estelle*, 502 U.S. at 67–68, 112 S.Ct. 475. Furthermore, having concluded that the evidence was ultimately admissible, the KCOA's later determination that any failure to hold a hearing was harmless has not been shown to be contrary to any established Supreme Court precedent.

In sum, the court finds petitioner has failed to demonstrate any constitutional deficiencies with his trial, which were the result of the trial court's admission of the § 60–455 evidence. As such, all relief will be denied as to this issue.

### C. Ineffective Assistance of Counsel

#### 1. Procedural Bar

Respondents assert the court should not consider the merits of petitioner's third

and fourth grounds because the claims are procedurally barred. The procedural bar arises from the "independent and adequate" state ground doctrine. *Coleman v. Thompson*, 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). "The doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Id.* In the federal habeas context, the "state judgment rests on independent and adequate state procedural grounds." *Id.* at 730, 111 S.Ct. 2546 (citing *Wainwright v. Sykes*, 433 U.S. 72, 81, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Ulster County Court v. Allen*, 442 U.S. 140, 148, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979)). To determine whether the state procedural ground was "independent," the federal habeas court must determine that the last state court's decision clearly and expressly stated that its ruling rested upon a state procedural bar. *See Church v. Sullivan*, 942 F.2d 1501, 1506 (10th Cir.1991) (citing *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)). To be considered "adequate," the state procedural rule implicated must be one, which is "strictly and regularly followed" by the state court. *Messer v. Roberts*, 74 F.3d 1009, 1015 (10th Cir.1996).

The procedural default doctrine does contain an exception.[7] If the petitioner shows both "cause" for his state-court de-

---

**6.** Within this context, the Tenth Circuit has found that "[m]istakenly admitted evidence of prior crimes or convictions can, in some instances, 'impinge upon the fundamental fairness of the trial itself.'" *Duvall*, 139 F.3d at 788 (quoting *United States v. Parker*, 604 F.2d 1327, 1329 (10th Cir.1979), overruled on other grounds by *United States v. Pennon*, 816 F.2d 527, 528 (10th Cir.1987)). In the present case, however, there is simply no indication from the record (or argument proffered by petitioner) that the § 60–455 evidence was, as a matter of state law, mistakenly admitted.

**7.** There is a second exception, for a federal habeas court may reach the merits of a state-defaulted federal claim when the petitioner demonstrates failure to consider the claim would result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750, 111 S.Ct. 2546. Petitioner presents no argument on this exception, and the court finds petitioner has not made a threshold showing of innocence.

fault and "prejudice" therefrom, the federal court may consider the claim's merits. *See Coleman*, 501 U.S. at 750, 111 S.Ct. 2546.

In this case, petitioner first raised his Sixth Amendment, ineffective assistance of counsel claims, in his post-conviction § 1507 motion. The district court's denial was later affirmed by the KCOA, yet the Kansas Supreme Court never reached the claims' merits. By denying petitioner's request to file his petition for review out of time, the Kansas Supreme Court passed on the merits due to petitioner's procedural failure to timely file. Respondents argue that petitioner's procedural miscue before the state court should now act to bar his present claims. The court agrees.

Without question, the Kansas Supreme Court rejected petitioner's federal claims on an independent and adequate state procedural ground. Under Kansas Supreme Court rule, petitioner had thirty days to file his petition for review. Kan.S.Ct.R. 8.03(a)(1) ("The petition shall be served and filed with the Clerk of the Appellate Courts within thirty (30) days after the date of the decision of the Court of Appeals. The *thirty-day period is jurisdictional.*") (emphasis added). Petitioner's failure to file his petition on time denied the Kansas Supreme Court the jurisdiction to consider the claims. Because petitioner has defaulted his claims, the court cannot consider them unless petitioner demonstrates both cause for the default and prejudice flowing therefrom.

### a. Cause

■ The cause standard requires a showing that an objective, external impediment prevented petitioner from timely filing his petition for review.[8] *See Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Petitioner asserts he was unable to timely file his petition because the institution in which he was incarcerated within unexpectedly shut down mail service. Apparently petitioner was incarcerated in a Missouri institution during the time relevant to this analysis. Petitioner's request for review was due to be filed with the Kansas Supreme Court on October 22, 2000. However, according to petitioner, Friday, October 20, 2000, was declared a state holiday in honor of Missouri Governor Mel Carnahan's funeral. Without forewarning, state officials closed the institution's mail service. The certificate of service accompanying petitioner's motion to file out of time reflects that the motion was placed in the institutional mail on October 23, 2000, and file stamped on October 26, 2000.[9] (Mot. Attached to Resp't Answer and Return). Petitioner alleges he was planning on mailing the petition on October 20th, and would have, but for the unorthodox closure of the mail service due to the state's unforseen tragedy.

While petitioner certainly confronts the court with an unique set of circumstances, the court declines to make a definitive finding as to cause. For even assuming, *arguendo*, that petitioner has demonstrat-

8. The court would note that petitioner's status as a *pro se* prisoner or his assumed lack of formal legal education may not serve as cause for his failure to timely present all of his allegations. *Rodriguez v. Maynard*, 948 F.2d 684, 688 (10th Cir.1991).

9. The court does not take a position on whether the Kansas Supreme Court would, under this factual scenario, follow the "prison mail-box" rule enunciated in *Houston v. Lack*, 487 U.S. 266, 270, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (concluding a *pro se* inmate's notice of appeal was filed at the moment the inmate delivered the notice to prison authorities for forwarding to the clerk of the court). *See Taylor v. McKune*, 25 Kan.App.2d 283, 962 P.2d 566, 569 (1998) (adopting *Houston* for purposes of inmate filings for state habeas pursuant to Kansas Statutes Annotated § 60–1501).

ed cause, the court finds he has failed to demonstrate any prejudice.

### b. Prejudice

To establish actual prejudice, petitioner must show that the errors of which he complains "worked to his actual and substantial disadvantage, infecting his entire trial [or appeal] with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Within the context of claims of ineffective assistance of counsel, the court is further guided by the two-prong analysis of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland,* a petitioner must show both that his counsel was ineffective and that he suffered prejudice from the error. *Id.* at 687, 104 S.Ct. 2052. To prove that counsel's assistance was constitutionally defective, petitioner must show that counsel's performance was deficient with reference to prevailing professional norms. Whereas prejudice is shown by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. *See also United States v. Rivera,* 900 F.2d 1462, 1472 (10th Cir.1990). *Strickland* is applicable to both claims of ineffective trial counsel and appellate counsel. *Smith v. Murray,* 477 U.S. 527, 535–36, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (applying *Strickland* to claim of attorney error on appeal).

### i. Appellate Counsel

Petitioner alleges his appellate counsel was deficient in the following respects:

1. Failed to preserve any of the issue [sic] raised on direct appeal for federal habeas corpus review. Appellate counsel only raised the issues as state law claims. Counsel did not refer to the United States Constitution, due process, fair trial, or cite any federal case law.

2. Failed to raise the claim that no court made a determination of the admissibility of the K.S.A. 60–455 evidence at trial was more probative value [sic] than in prejudicial effect.

3. Failed to raise the issue that the trial court denied plaintiff due process by the trial court sua sponte giving instruction No. 12—aiding and abetting. Petitioner was only charged as the principle and was not on notice that he would have to defend against being an accomplice and the court giving the adding and abetting instruction allowed the jury to convict petitioner of a crime he was not charge [sic] with. There is no way of telling how many jurors convicted as principle and how many convicted of aiding and abetting.

(Pet. for Writ at 10).

To satisfy *Strickland* in this context, petitioner must show that if his counsel had raised these issues, there is a reasonable probability he would have prevailed on appeal. *Smith v. Robbins,* 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). In considering the two-pronged analysis of *Strickland,* the court is persuaded to leave the first issue and address whether counsel's alleged deficiency prejudiced petitioner's appeal. *See United States v. Haddock,* 12 F.3d 950, 955 (10th Cir.1993) ("The Supreme Court has observed that often it may be easier to dispose of an ineffectiveness claim for lack of prejudice than to determine whether the alleged errors were legally deficient.").

■ After review, the court finds all three of petitioner's claims fail the *Strickland* prejudice analysis. As to the first claim, petitioner has demonstrated no prejudice in appellate counsel's choice of legalese in describing petitioner's allegations of trial error. Petitioner's apparent belief

that a federal habeas court will only consider claims exclusively couched in certain terminology is clearly erroneous. Furthermore, without question, in no way did appellate counsel's use or non-use of specific phrases negatively impact the KCOA's decision.

■ As to the second claim, petitioner also fails to identify any prejudice. As the court's earlier discussion clearly reveals, within his original direct appeal in 1992, the KCOA squarely addressed petitioner's claim regarding the lack of a § 60–455 hearing. In fact, appellate counsel placed the § 60–455 hearing issue directly before the appellate court.

■ As to the final claim, petitioner again fails to demonstrate any prejudice flowing from the allegedly deficient representation. If the aiding and abetting instruction issue had been raised before the KCOA, the court concludes success was far from a reasonable probability. The issue of whether or not an aiding and abetting instruction may be properly given when not originally charged by the prosecution was squarely addressed by the Kansas Supreme Court in *State v. Pennington*, 254 Kan. 757, 869 P.2d 624, 629 (1994). In *Pennington*, the Kansas Supreme Court reiterated its earlier position by stating:

> We have held that the State need not charge aiding and abetting in the charging document in order to pursue an aiding an abetting theory at trial. If, from the totality of the evidence, a jury reasonably could conclude that the defendant aided and abetted another in the commission of the crime, then it is appropriate to instruct the jury on aiding and abetting.

869 P.2d at 629 (internal citations omitted). The court's own review of the record reveals ample evidence supporting the trial court's decision to give the instruction. Having such difficult precedent and facts to overcome, the court finds petitioner's

chance of success on appeal was remote at best.

In sum, the court finds all three of petitioner's ineffective assistance of appellate counsel arguments fail the prejudice prong of *Strickland*.

#### ii. Trial Counsel

Petitioner alleges his trial counsel was deficient in the following respects:

1. Failed to object to a trial setting beyond the 180 day and the 120 day speedy trial provisions of the [IAD]. . . .

2. Failed to object to the K.S.A. 60–455 evidence being admitted at trial without a hearing to determine whether the probative value outweighed the prejudicial effect of the evidence with the jury.

3. Failed to properly impeach and cross-examine Jesse Kirkland with his prior inconsistent statements, testimony and other evidence to discredit him.

4. Failed to investigate Kirkland's background and knew nothing about Kirkland personally except his criminal history.

5. Failed to ascertain from McDonald why Kirkland had threatened her life. The most obvious reason was to ensure that she testified against petitioner the way Kirkland had instructed her to.

(Pet. for Writ at 11a–11b).

Once again, the court will bypass the performance prong of *Strickland* and address whether counsel's alleged errors resulted in any prejudice. In this context, prejudice is shown if there is a reasonable probability that, but for counsel's errors, the outcome of the trial would have been different.

■ As to the first and second claims, the court finds no showing of prejudice. The issues supposedly justifying the omit-

ted objections were squarely addressed and rejected by the KCOA. This fact weighs heavily against petitioner's position that if such objections had been levied, the trial's outcome would have been different. Furthermore, the preservation of the issues for appeal is certainly evidenced by the KCOA's 1992 opinion.

■ As to petitioner's claim regarding counsel's questioning of Jesse Kirkland, the court also finds petitioner suffered no prejudice. Petitioner argues that Kirkland's credibility was vulnerable to impeachment based on certain "inconsistencies" between his trial testimony and prior statements, which counsel failed to bring to the jury's attention. Certainly Kirkland's testimony and perceived credibility were critical to the prosecution's case. However, after reviewing the trial transcripts, the court is persuaded that because counsel thoroughly attacked Kirkland's credibility, any additional impeachment would have had a negligible impact on Kirkland's credibility and the trial's ultimate outcome.

During her cross of Kirkland, counsel attacked his credibility in the following manner. First, counsel thoroughly cross-examined Kirkland regarding several prior inconsistent statements. (Trial Tr. at 154–73). Second, Kirkland's credibility was called into doubt by counsel's introduction of Kirkland's prior convictions. (*Id.* at 154–56). Third, counsel firmly questioned Kirkland regarding his motivation to testify in light of his negotiated plea agreement. (*Id.* at 159–61).

Finally, the alleged inconsistencies now raised by petitioner concern only specific details surrounding petitioner's and Kirkland's activities in Missouri and Kansas.[10] However, Kirkland's inability to remain consistent in terms of certain details throughout his prior statements was strongly attacked by counsel on cross. (*Id.* at 165, 167–68, 170, 172–73). Accordingly, even if Kirkland had been impeached with petitioner's identified inconsistencies, the court's confidence in the trial's outcome has not been undermined. *See Moore v. Marr*, 254 F.3d 1235, 1241 (10th Cir.2001) (finding petitioner suffered no prejudice by trial counsel's alleged failure to impeach a witness due to the totality of the evidence presented at trial).

■ As to petitioner's claim regarding counsel's alleged lack of investigation, the court again finds no showing of prejudice. Petitioner has failed to identify any undiscovered facts, which may have negatively impacted Kirkland's credibility or in any manner affected the trial's outcome. As such, the court is unable to discern any

---

**10.** Petitioner identifies the following inconsistencies: (1) Kirkland's prior testimony that petitioner had driven the vehicle to one of the fire sites in Kansas; (2) Kirkland testified at petitioner's trial that he was "never" in Kansas, but in prior statements had admitted to being in Kansas before; (3) Kirkland testified at trial that he assisted petitioner because petitioner had threatened Kirkland and his family, but in prior testimony Kirkland had stated petitioner threatened him after their arrest; (4) Kirkland's full sentencing exposure and benefits from the plea were not fully explained to the jury; (5) Kirkland gave inconsistent statements as to whether or not he charged individuals for repairing their vehi-

cles; (6) Kirkland's prior statements that accelerant was already in the vehicle before he and petitioner drove to the fire sites; (7) Kirkland had rented a storage shed under his name, his sister's, and petitioner's in order to store stolen goods, but that his sister knew nothing about the shed and that petitioner had passed two polygraph tests concerning the shed; (8) Kirkland had reason to be upset with the police because they confiscated a chain from petitioner's car; and (9) Kirkland and McDonald were still in a relationship based on Kirkland's statements to law enforcement officers. (Pet. for Writ at 11a–11b).

prejudice suffered by petitioner because of the omitted investigation.

■ As to petitioner's claim concerning Kirkland's threats against McDonald, the court again finds no prejudice under *Strickland.* McDonald did testify that while Kirkland was in jail, he had telephoned and threatened her. (Trail Tr. at 244). Petitioner argues that if counsel had pursued this issue on cross, McDonald may have likely stated Kirkland threatened her in order to force her into testifying in accordance with his version of the facts. Of course, petitioner's assertion is premised solely on speculation and conjecture, and the court is unpersuaded by an argument based only on petitioner's own speculation. Furthermore, on cross, counsel did reveal to the jury the extent of McDonald's relationship with Kirkland. (*Id.* at 254). Counsel also explored the fact that McDonald agreed to cooperate with law enforcement officials only after visiting with Kirkland in jail. (*Id.* at 256–57). The issue of McDonald's motivation or bias was, therefore, adequately placed before the jury for consideration. In short, the court's confidence in the outcome of the trial is not disturbed by counsel's failure to pursue the inferred issue of threats or coercion.

After reviewing petitioner's five claims of ineffective assistance of trial counsel, the court finds all five fail the prejudice prong of *Strickland.*

### 2. Procedural Bar Conclusion

For purposes of clarity, the court will summarizes its findings as to petitioner's ineffective assistance of counsel claims. The court first found that petitioner's ineffective assistance of appellate and trial

counsel claims were procedurally barred due to petitioner's state law procedural default. The court next considered whether petitioner's claims could be saved by application of the "cause and prejudice" exception. Assuming petitioner demonstrated sufficient cause, the court continued its analysis into whether petitioner demonstrated actual prejudice. In doing so, the court was required to contemplate the merits of the defaulted claims under *Strickland.* All of petitioner's specific allegations were found to fail the prejudice prong of the *Strickland* analysis. Having failed to present viable claims of ineffective assistance of counsel, the court finds petitioner has not suffered prejudice as a result of his procedural default. Therefore, petitioner fails the "cause and prejudice" standard, and petitioner's claims, titled grounds III and IV in his petition, are procedurally barred.[11] All relief will be denied.

## V. CONCLUSION

As to petitioner's first ground for relief, the court found petitioner failed to present a cognizable claim under § 2254. The court denies all relief without considering the propriety of the KCOA's underlying decision. As to petitioner's second ground for relief, the court reached the claim's merits and denies all relief. Finally, the court finds petitioner's third and fourth grounds for relief are procedurally barred and denies all relief. Having rejected all of petitioner's arguments, the petition for a writ of habeas corpus shall be denied.

**IT IS THEREFORE BY THIS COURT ORDERED** that the Petition for a Writ of Habeas Corpus (Doc. 1) brought

---

11. Obviously, the posture of this matter created an unique situation, for the court was required to consider the defaulted claims' merits, in an attempt to determine if the court should consider the claims' merits. As awkward as this analytical avenue may seem, the court's ruling in this matter rests on the procedural bar, not on the merits of the underlying claims.

by a person in state custody pursuant to 28 U.S.C. § 2254 is denied.